IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

William Malone,                          )
                                         )
                                         )
                                         )
                    Plaintiff,           )      Civil Action No. 6:06-2631-RBH-BHH
                                         )
                                         )      **REPORT AND RECOMMENDATION**
                                         )      **OF  MAGISTRATE  JUDGE**
                                         )
                                         )
           vs.                           )
                                         )
Greenville County,                       )
                                         )
                    Defendant.           )
_____  )

     This matter is before the Court on the parties' cross motions for summary judgment [Doc. 62, 105] pursuant to Federal Rule of Civil Procedure 56.  The plaintiff has pled claims pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b.

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

     The plaintiff applied for employment with the Sheriff of Greenville County in October, 2005. (Pl. Summ. J. Ex. 1; Pl. Dep. at 47-48.)  On October 4, the defendant's personnel director, Lieutenant David Williams, sent the plaintiff a letter outlining the Sheriff's hiring process.  (Pl. Summ. J. Ex. 3; Pl. Dep. at 50-51.) The letter stated that the Sheriff's process includes such items as a "drug screening," a "polygraph examination," and a "physical abilities test," and that these occur "after a conditional offer of employment has been made." (Pl. Summ. J. Ex. 3.)  The letter also documents that, after these steps, the

Sheriff approves the hiring of a candidate. *Id*. At all time relevant to this case, Steve Loftis was the Sheriff of Greenville County.

The plaintiff in fact completed a screening questionnaire that inquired into areas such as prior crimes and convictions, credit problems, military service, and employment history (the "Pre-Offer Questionnaire"). (Pl. Summ. J. Ex. 4; Williams Dep. at 80.) On November 1 2005, the defendant informed the plaintiff of his selection for an interview. (Pl. Summ. J. Ex. 6; Pl. Dep. at 66.) Williams and a Sergeant Chris Taylor were part of the panel that interviewed the plaintiff. On November 28, the defendant sent the plaintiff a congratulatory letter, informing him that he was "moving forward into the background phase of the application process." (See Pl. Summ. J. Ex.10; Williams Dep. at 118.)

On December 7, 2005, the plaintiff met with Sergeant Taylor, who provided the plaintiff with a document entitled: "Conditional Offer of Employment." (Pl. Summ. J. Ex. 11; Williams Dep. at 62.) After the plaintiff received the "Conditional Offer," the plaintiff completed another questionnaire (the "Post-Offer Questionnaire") on December 7, which proposed both medical and non-medical questions. On this form, the plaintiff disclosed for the first time that he is diabetic. (Pl. Summ. J. Exs. 12, 23.) After reviewing the questionnaire, Sergeant Taylor told the plaintiff that he could not take the polygraph examination because of his diabetes. (Pl. Dep. at 97.)

Sheriff Loftis was informed that the plaintiff could not take the polygraph examination. Immediately after receiving such information and upon consulting the plaintiff's background file, Sheriff Loftis made the decision to discontinue the plaintiff's hiring process. (Taylor Dep. at 47-49.) The plaintiff did not participate in either a physical fitness test or psychological evaluation. (See Pl. Dep. at 100-01; Pl. Aff. ¶ 4.) The defendant represents that the decision to discontinue the hiring process was based on the plaintiff's admission, in his Post-Offer Questionnaire, that he had used marijuana as a sophomore in college. The defendant contends that the admission was inconsistent with

2

the plaintiff's prior response, on the Pre-Offer Questionnaire, that he had neither possessed nor sold illegal drugs.  (Pl. Summ. J. Ex. 4; Williams Dep. at 80.)  The defendant also contends that the admission indicated that the plaintiff had used marijuana within the two years prior to his application, in violation of the defendant's hiring policy.

On December 9 (two days after the offer), Williams sent the plaintiff a formal letter stating: "Sheriff Loftis has reviewed the information compiled during the background investigation phase of your application for employment.  After careful consideration of the contents of the file, you are no longer being considered for employment." (Pl. Summ. J. Ex. 13; Pl Dep. at 102.)  After receiving Williams's letter, the plaintiff called Taylor.  Taylor repeated that the plaintiff could not take the polygraph test because he is diabetic.  (Pl. Dep. at 100.) Consistent with the explanation given by Taylor and Williams, the defendant's Assistant Administrator for Human Resources, Vivian Anthony, has asserted: "Mr. Malone's own admission that he is a diabetic precluded him from taking a polygraph examination, in accordance with the Sheriff's Office's procedures." (Pl. Summ. J. Ex. 14; Loftis Dep. at 14.)

The plaintiff commenced this action specifically alleging that the defendant's refusal to hire the plaintiff was based on unlawful medical questioning.  The plaintiff later amended his Complaint to include a claim pursuant to the Fair Credit Reporting Act ("FCRA") after the defendant admitted in discovery that it had based its decision, in part, on information obtained in the plaintiff's credit report without fulfilling certain notice obligations imposed by the FCRA.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

3

Fed. R. Civ. P. 56(c).  Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Furthermore, Rule 56(e) provides in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this

4

rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

I.     **ADA Act Claims**

Although encompassed in a single count, the plaintiff has pled four claims pursuant to the ADA. The first is a claim that the defendant made an improper medical inquiry without first making a real conditional offer of employment ("Medical Inquiry" claim), in violation of 42 U.S.C.A. § 12112(d)(2)(A) & (d)(3). The plaintiff's second claim alleges that the defendant failed to segregate medical and non-medical information on separate forms and in separate medical files ("Segregation" claim), in violation of 42 U.S.C. § 12112(d)(3)(B). Third, the plaintiff has pled a discriminatory failure to hire claim. Finally, the plaintiff claims that the defendant's refusal to allow him to be polygraphed improperly "classified" the plaintiff in a way that adversely affected his hiring status, in violation of 42 U.S.C. § 12112 (b)(1).[1]

---

[1] This last claim is essentially one for disparate treatment. The plaintiff argues that his diabetic condition, as regarded by the defendant, prohibited him from participating in a polygraph examination, which other non-diabetic applicants undergo, and which would have ostensibly vindicated him in regards to his drug use/possession answers. In the Court's opinion, however, this claim has not been put directly at issue by the cross motions for summary judgment, notwithstanding the fact that the parties have certainly discussed the facts surrounding the decision not to polygraph the plaintiff in substantial detail. The plaintiff did not seek summary judgment on the claim in his motion [see Doc. 105], and the defendant did not specifically make any argument concerning such alleged disparate treatment in its motion [see Doc. 62]. The claim is really only summarized for the first time in the plaintiff's response to the defendant's motion and, even then, in somewhat cursory fashion. [Doc. 107 at 25.] In truth, the original motions of the parties tend to talk past one another and only in the plaintiff's response to the defendant's motion for summary judgment are some of the core issues brought into better clarity. To the extent the claim is as the Court describes it and to the extent the plaintiff maintains it in earnest, a new motion and more specific briefing would be essential for the Court to navigate it.

In general, "The Americans with Disabilities Act of 1990 (ADA), 104 Stat. 327, as amended, 42 U.S.C. § 12101 et seq., makes it unlawful for an employer, with respect to hiring, to 'discriminate against a qualified individual with a disability because of the disability of such individual.'" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003) (quoting 42 U.S.C. §§ 12112(a)). Moreover, Section 102(a) of the ADA provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures [or] hiring." 42 U.S.C. § 12112(a) (emphasis added); 29 C.F.R. § 1630.4(a).

The Court will consider each claim in turn.

**A.    Medical Inquiry Claim**

The plaintiff first contends that summary judgment should be granted concerning his ADA Medical Inquiry claim because there can be no dispute that the defendant conducted an inquiry into the plaintiff's medical condition before the defendant had made a real offer of employment. The ADA prohibits an employer from conducting "a medical examination" or making "inquiries of a job applicant as to whether such applicant is an individual with a disability," until "***after an offer of employment has been made** to a job applicant*." 42 U.S.C.A. § 12112(d)(2)(A) & (d)(3) (emphasis added). Although the Fourth Circuit has not addressed the issue, other circuit courts of appeal appear to agree that the offer of employment must be "real." *Leonel v. American Airlines, Inc.*, 400 F.3d 702, 708 (9th Cir. 2005); *see also O'Neal v. City of New Albany*, 293 F.3d 998, 1009 (7th Cir.2002); *Buchanan v. City of San Antonio*, 85 F.3d 196, 199 (5th Cir.1996). "'A job offer is *real* if the employer has evaluated all relevant ***non-medical*** information which it reasonably could have obtained and analyzed prior to giving the offer.'" *Id.* (emphasis added) (quoting the Equal Employment Opportunity Commission, ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations, 17). In other words, an employer must complete all portions of its application process which do not relate to the applicant's

6

medical condition, before it can ask about any disabilities.  If, therefore, conditions of employment remain at the time the offer is made, to wit, a personal interview or background investigation, then the offer is not "real" and the employer is prohibited from making any inquiry into the medical condition of the applicant.  *Id*. at 710-11.

This requirement is intended to "'ensure that an applicant's possible hidden disability (including a prior history of a disability) is not considered before the employer evaluates an applicant's non-medical qualifications.'"  *See O'Neal*, 293 F.3d at 1009 (quoting ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations).  Said more directly, by isolating the medical examination from other criteria of the hiring process, the ADA makes it easier to analyze whether information related to a medical condition improperly informed the hiring decision.  *See Leonel*, 400 F.3d at 708-09.  For instance, if a conditional offer is revoked after the plaintiff later participates in a physical abilities test, background investigation, and medical examination, it is more difficult to determine which inquiry was the decisive one, regardless of the actual reason given.  If, however, all elements of the application process are complete at the time of a conditional offer, then any subsequent revocation after a medical examination makes it probable that the decision was based on the results of that test.  *See generally id.*

Here, it appears that a number of portions of the application process were outstanding at the time of the conditional offer, including the medical exam.  Such is the scenario that Section 12112, by its terms, seeks to avoid.

### 1.    Non-Medical Portions of Application Process

Specifically, the plaintiff contends that the following non-medical portions of his application process could have been completed before the conditional offer was made but, in fact,  remained outstanding at that time: a credit report check; physical abilities test; drug screening test; drug-use questions; and polygraph examination.  [See Doc. 107-12.]   It is

undisputed that on December 7, 2005, the plaintiff was given a document entitled: "Conditional Offer of Employment," which states in relevant part:

> This document is to serve as a conditional offer of employment. Once you have accepted this offer of employment for the position of Deputy Sheriff, you will be required to successfully complete the remaining elements in the selection process: post offer questionnaire, polygraph examination, drug screening, psychological assessment, physical abilities test, and medical examination.

*Id*. In addition, the following handwritten entry was made in the left margin: "Also Credit Report."[2] *Id*.

The defendant does not disagree that these components of the process were outstanding at the time of the offer.[3] Instead it responds that while generally non-medical in quality, each of these elements of the hiring process had the potential to improperly implicate medical information concerning the plaintiff and, therefore, could not have been performed before the conditional offer. The defendant contends that it has the right to make inquiries which help it determine whether an applicant can safely be subjected to parts of the application process. To that end, the defendant emphasizes that a prohibited "disability-related question" is any "that *is likely to elicit information* about a disability." EEOC Compl. Man. ¶ 6903, at 5372 (emphasis added); *Downs v. Massachusetts Bay Transp. Authority*, 13 F. Supp.2d 130, 138 (D. Mass.1998) (quoting EEOC Compl. Man).

While the defendant is not incorrect in its recitation of the legal standard, it has drawn it too broadly in light of relevant case authority. Moreover, the Court need not address each component of the hiring process, at issue in this case, to reject the defendant's position. It is enough that both a credit report and physical abilities test were

---

[2] The defendant has verified that the notation made on the offer reflected that a credit check had not yet been done. (Williams Dep. at 23-24.)

[3] The parties do disagree as to whether the drug questioning, performed after the offer, was duplicative of the drug questioning done prior to the offer. The defendant obviously believes that it was and on that basis rejected the plaintiff's respective answers as inconsistent.

outstanding at the time of the offer to render it not "real" and to expose the medical inquiries as improper.

### a.    Physical Abilities Test

First, it cannot be disputed that a physical abilities test can be conducted prior to a conditional offer of employment.  *See Buchanan v. City of San Antonio*, 85 F.3d 196, 199 (5th Cir. 1996) (stating that "the document itself makes clear that the offer was not conditioned solely on a medical examination, but was instead conditioned on successful completion of 'the entire screening process,' which included ' . . . a physical fitness test . . . .'")  The Department of Justice issued an ADA Guidance, specifically to law enforcement, that addresses this point: "You can give job applicants tests measuring an applicant's ability to perform job-related tasks or physical fitness tests (tests measuring performance of running, lifting, etc.) **before any job offer is made**." [Doc. 105-20 (United States Department of Justice: Questions And Answers: The Americans With Disabilities Act and Hiring Police Officers, at 1 (question 3), http://www.ada.gov/copsq7a.htm ("DOJ Guidance")) (emphasis added).]  The EEOC Guidance on the issue is consistent.[4] [See Doc. 105-19 (EEOC Guidance at E-7, http://eeoc.gov/policy/docs/preemp.html, ("A police department tests police officer applicants' ability to run through an obstacle course designed to simulate a suspect chase in an urban setting. This is not a medical examination."); *see id.* ("A physical fitness test, in which an applicant's performance of physical tests – such as running or lifting – is measured, is not a medical examination.").]

---

[4]  As the plaintiff represents, EEOC Guidance materials are entitled to respect, but not full deference. *See National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 110 n.6 (2002) (citations omitted).  Likewise, DOJ Guidance is entitled to similar deference.  *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b), the Department's views are entitled to deference.").  It should also be noted that both Guidance statements identified by the Court remain currently posted at the websites of the EEOC and DOJ, respectively, and the Court has been given no reason to doubt that they are a reflection of those agencies' continuing position on the matter.  *See* http://www.ada.gov/copsq7a.htm; http://eeoc.gov/policy/docs/preemp.html.

While the defendant argues that a physical abilities test might either reveal or even cause a medical concern, it has not produced any case law refuting the conclusion in *Buchanan* that such an examination is permissible in spite of its potential to necessarily reveal medical data about an applicant.    Further, the defendant's argument that *Buchanan* is mere *dicta* on this point, is not persuasive, especially in light of the DOJ's and EEOC's express guidance that physical tests are, in fact, not to be considered medical examinations.[5]    To the extent the defendant, itself, has relied upon the EEOC's more general statement of policy and guidance that any examination which has a tendency to "elicit" disability information is prohibited, that axiom should reasonably defer to the more specific instruction of the same regulatory body that a physical abilities test does not so qualify.

The defendant has also cited a District of Massachusetts case; the Court find it inapposite to the issue at bar because the decision did not concern a physical abilities test, specifically.    *See Downs v. Mass. Bay Transp. Auth.*, 13 F. Supp. 2d 130, 137-38 (D. Mass. 1998).    As far as the Court can tell, *Buchanan* stands essentially alone and is, for purposes of this case, persuasively dispositive.

### b.    Credit Check

A future credit check also rendered the conditional offer not "real."    The defendant does not dispute that the credit check is non-medical in nature but rather that it is ambiguous in the record whether or not the offer was, in fact, conditioned upon a future

---

[5]   The defendant reasons that because the Court in *Buchanan* listed the physical abilities test among other elements of the hiring process, also not completed at the time of the conditional offer, and because the physical abilities test was not specifically analyzed, it cannot be concluded that the court meant to rule definitively that a physical abilities test is non-medical in nature.   *See Buchanan*, 85 F.3d at 199.   To the Court, however, *Buchanan* can reasonably be interpreted to conclude that each of the outstanding components listed could have been conducted pre-offer: physical and psychological examinations, polygraph examination, physical fitness test, assessment board, and extensive background investigation.   *See id.*   It seems that the *Buchanan* court would have been constrained to carve out of its holding any of the list which did not qualify. Moreover, the guidance of the DOJ and EEOC both illuminates and buttresses the reasoning in *Buchanan*.   The defendant has not given the Court any basis to depart from it.

credit check.  The Court, however, finds the record susceptible of only one interpretation as to this point.  In addition to the face of the offer itself, which reads "Also Credit Report," Leuitenant David Williams, the defendant's Recruitment Coordinator, testified that such a notation indicated that the offer was to be conditioned on a credit check.   (Williams Dep. at 23-24.)  The defendant has not put forward evidence from which a reasonable jury could conclude otherwise.  Moreover, the defendant's suggestion that it ultimately did not rely upon the results of the credit check are not relevant to the inquiry.  First, there is evidence that it did rely upon such information.   (See Def. Resp. Interrogs. 1-2 (stating that the plaintiff "demonstrated a failure or refusal to pay his debts based on his credit report")).  Second and, more critically, the defendant could have performed the credit report prior to the conditional offer and did not, rendering the offer not "real" at the time given, regardless of whether the results ultimately influenced the hiring decision.

        The Court, therefore, concludes that the defendant, in fact, violated the ADA in the technical sense that it prematurely made inquiry into the plaintiff's medical condition.  That conclusion, however, does not entitle the plaintiff to relief as a matter of law on the liability portion of his Medical Inquiry claim.  As the defendant argues, the plaintiff must still prove a causal link between the defendant's improper medical inquiry and some injury.  *See Buchanan*, 85 F.3d at 200 ("Our reading of the ADA requires a causal link between the violation and the damages sought by the plaintiff."); *see also Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 562 n.18 (5th Cir. 1998).  While the defendant has framed that argument as one relating to an "injury in fact," the plaintiff responds that he is not seeking summary judgment as to his damages but only as to any liability of the defendant.  In truth, however, the issue is not one of damages but rather causation.[6]   For liability to rest, there must be

---

[6]  Of course that is not to say that the plaintiff need not demonstrate an injury in fact.  He certainly does.  The Court is simply focusing attention on the fact that liability cannot be established merely as a result of the technical failure to extend a real offer prior to the medical inquiry.

11

a connection between the alleged wrong and some damage. *See Armstrong*, 141 F.3d at 562 n.8. That is not an inquiry separate from the liability determination, it is a part of it.

Regardless, the Court finds that the plaintiff has created a genuine issue of fact as to causation. He has put forward evidence that after the conditional offer on December 7 he responded to the Post-Offer Questionnaire, disclosing for the first time his diabetic condition. [Docs. 105-13; 105-24.] He has also put forward evidence that the disclosure of his diabetic condition was made known to the relevant decisionmaker, Sheriff Loftis. (See Taylor Dep. at 40-41 ("I presented the folder to the Sheriff"); *id*. at 39 (stating that he told Lt. Williams "that I was going to speak with the sheriff and give him the forms and let him make a determination"); *id*. at 51 (acknowledging that Sheriff Loftis had the file on his desk, was looking at "that page" (i.e. Def. Doc. 57), which includes the diabetes disclosure, and that Sheriff Loftis "looked at" the forms); Doc. 105-14 (letter from Williams to Plaintiff stating that "Sheriff Taylor has reviewed the information compiled during the background investigation" and that the decision to not employ Plaintiff was made "[a]fter careful consideration of the contents of the file"). Two days later, on December 9, the conditional offer was, in fact, revoked. [Doc. 105-14.] The resulting injury alleged, of course, is that he was not *hired* "because of his responses to the impermissible questions . . . ." *Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir. 1998).

The defendant insists, however, that Sheriff Loftis was never informed that the plaintiff was a diabetic. (See Loftis Dep. at 35; Taylor Dep. at 52-53, 70; see also Williams Dep. at 99.) The Court, however, may not decide it. The above-referenced evidence of the plaintiff certainly creates issues of fact for a jury to weigh as to whether or not Loftis was made aware of the plaintiff's diabetic condition.

The defendant also argues that the causation element of the plaintiff's Medical Inquiry claim fails because he cannot refute that the defendant "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C.A. §

12

2000e-5(g)(2)(B); *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999); *Buchanan*, 85 F.3d at 200. The defendant claims that, regardless of any impermissible factor, Sheriff Loftis was entitled to reject the plaintiff's application for the plaintiff's alleged admission that he used marijuana within the two years prior to his application. (Loftis Dep. at 22.) As will be discussed in greater detail *infra*, however, the plaintiff did not use marijuana in that time frame nor was Sheriff Loftis ever told as much. (See Pl. Aff. ¶ 1; Pl. Opp. Summ. J. Ex. 12 at 1; Taylor Dep. at 36.) Therefore, issues of fact exist as to the defendant's real reason for rejecting the plaintiff's application and whether it would (or even could) have taken the same action in the absence of the allegedly impermissible motivating factor.

The plaintiff, therefore, has put forward evidence of causation sufficient to survive summary judgment as to his Medical Inquiry claim but insufficient to eliminate all doubt, in his favor, as to the defendant's liability.[7]

### B.    Segregation of Information Claim

The plaintiff also contends that the defendant violated the ADA by failing to maintain his medical information on separate forms and in separate medical files. The ADA provides that an employer "may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, **if** . . . information obtained regarding the medical condition or history of the applicant is collected and maintained on **separate forms** and in **separate medical files** and is treated as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B) (emphasis added);

---

[7]  It should be noted that the Fourth Circuit has left open the issue of whether a person not actually disabled may maintain a claim under Section 12112(d)(2)(A).  *See Pence v. Tenneco Auto. Operating Co., Inc.,* 169 Fed. Appx. 808 (4th Cir. 2006); *see also Fuzy v. S&B Engineers & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir. 2003).  The parties have not put the matter squarely at issue here, but this Court is inclined to agree with the Tenth Circuit in *Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir.1998), that such a claim may proceed, even in the absence of disability.  The parties agree that the plaintiff is not, in fact, disabled as defined by the ADA.

*Heston v. Underwriters Laboratories, Inc.*, 297 F. Supp. 2d 840, 844 (M.D.N.C. 2003). "Failure to comply with that confidentiality requirement constitutes discrimination in violation of the ADA." *Fisher v. Harvey*, 2006 WL 2370207, at *3-4 (E.D. Tenn. 2006).

There is no dispute that the medical information obtained by the defendant is solicited on the same page of the *same form* as non-medical information. [Doc. 105-13 (including questions concerning polygraph examinations, medical information, and drug usage).] The defendant does not contend otherwise.

As far as the Court can determine, the defendant makes no specific response to the plaintiff's Segregation Claim other than to generally reiterate that a causal link must exist between the technical violation and some injury in fact. *See Tice v. Centre Area Transp. Authority*, 247 F.3d 506, 519-20 (3d Cir. 2001). But, for the same reasons recited above the plaintiff has created a genuine issue of fact as to both a causal link and an injury in fact. The commingling of medical and non-medical information ensured that the relevant decisionmaker would, at least, have the occasion to be aware of the plaintiff's diabetic condition at the same time that he was processing other elements of the application process – drug answers, etc. (See Taylor Dep. at 39, 40-41, 51; [Doc. 105-14].) Accordingly, genuine issues of fact remain as to the plaintiff's Segregation Claim.

### C.     Failure to Hire Claim

To establish a failure to hire claim under the ADA, the plaintiff may rely on a modified version of the *McDonnell Douglas* proof mechanism. *See Heiko. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006) (stating that because the employer disclaims any suggestion that its decision was founded on the plaintiff's disability the case should be analyzed under the familiar framework set forth in *McDonnell Douglas*). Under *McDonnell Douglas*, the plaintiff must first make out a *prima facie* case of discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.2005). If he does so successfully, the burden then shifts to the defendant to provide a legitimate,

non-discriminatory explanation for its decision. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir.2003). Once such a neutral reason is proffered, the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). At that point, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148; *see also Anderson*, 406 F.3d at 269. The plaintiff may also rely on ordinary principles of proof, using direct or indirect evidence to establish his claim, in lieu of the *McDonnell Douglas* proof scheme. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (ADA). In this case, the plaintiff has elected to employ *McDonnell Douglas,* at least in regards to his failure-to-hire claim.[8]

### 1.    *Prima Facie* Case

Although the Fourth Circuit has not precisely framed the *prima facie* case in an ADA failure-to-hire case specifically, it is easily extrapolated from the circuit's failure-to-promote jurisprudence. In order to establish a *prima facie* case of failure to hire under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the ADA's protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the defendants rejected his application under circumstances that give rise to an inference of discrimination. *See Heiko*, 434 F.3d at 258 (ADA - failure to promote); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).

The defendant's only argument in regards to the *prima facie* case is that the plaintiff cannot establish any disability and, therefore, is not within the protected class. Specifically, the defendant contends that the plaintiff's mere insulin-dependent diabetic

---

[8] The plaintiff contends that he has direct evidence in regards to his disparate treatment claim, which the Court has already concluded it has no basis to consider.

condition is not a disability, as a matter of law.  The plaintiff agrees that his condition is not, in fact, disabling, but argues that the defendant allegedly *regarded* his diabetic condition as such.  An individual qualifies as disabled under the ADA if he (1) suffers from "a physical or mental impairment that substantially limits one or more of [his] major life activities," (2) has "a record of such an impairment," **or** (3) **is *"regarded as having such an impairment."***  42 U.S.C. § 12102(2) (2000) (emphasis added).

The defendant has not in any way addressed the plaintiff's "regarded as" claim, either in its original motion or its reply.  It has failed, therefore, to make the required showing pursuant to Fed. R. Civ. P. 56.  Accordingly, the plaintiff need not have made any response. Notwithstanding, the plaintiff has produced at least some evidence creating a genuine issue of fact as to whether the defendant regarded him as disabled.  Namely, the plaintiff has produced evidence that the defendant perceived the plaintiff's diabetic condition as one susceptible to disabling seizures.  (Williams Dep. at 95-96; Seigler Dep. at 30.)  As stated, the defendant has made no reply.

It should be highlighted that a person is only "regarded as" disabled if "a covered entity mistakenly believes that the person's actual, nonlimiting impairment ***substantially limits a major life activit[y]***," in this case, working.  *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 521-22 (U.S. 1999) (emphasis added); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *see also Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378, 387 n.2 (4th Cir. 2008); *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 n.5 (4th Cir. 2002).  Based on the defendant's failure to raise the issue and the plaintiff's evidence, submitted at this time, issues of fact exist as to the extent to which the defendant might have perceived the plaintiff as disabled.  Without additional evidence that the defendant perceived the plaintiff's diabetes as substantially limiting, however, the claim might struggle to survive additional argument on this point.

16

The defendant does not contest the plaintiff's ability to establish the other three elements of his *prima facie* case.

### 2.    Legitimate, Non-Discriminatory Reason

The defendant has put forward the following legitimate, non-discriminatory reasons for refusing to hire the plaintiff: (1) the plaintiff allegedly admitted to having used marijuana sometime within the two years prior to his application and (2) the plaintiff provided inconsistent, if not deceptive, answers related to drugs on two different forms.  (See Loftis Dep. at 14-16, 18, 22; Taylor Dep. at 70-71; Williams Dep. at 43-44.)  In the least, the plaintiff's perceived dishonesty qualifies as a non-discriminatory reason for rejecting the plaintiff's application.  *See Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1116 (D.C.Cir.2000) ("Intentional dishonesty on an employment application surely constitutes such a reason."); *Washington v. Digital Equip. Corp.*, 1992 WL 167946, at \*5-6 (4th Cir. July 21, 1992).

### 3.    Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of his application was, in fact, an unlawful one.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)  As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false.  *See id.* at 144.  The Court easily finds that the plaintiff has produced evidence from which a reasonable jury could find pretext.

As to the prior-drug-use justification, Sheriff Loftis testified that "[t]he reason for me denying his employment was because of the admitted marijuana use within the two-year period. ***That was solely the reason***." (Loftis Dep. at 22 (emphasis added).)  Sheriff Loftis testified that the source of this information was Sergeant Taylor. (Loftis Dep. at 19.)  Taylor, however, has unequivocally denied telling Sheriff Loftis that the plaintiff had smoked

17

marijuana within two years of his application.  (Taylor Dep. at 36.)  The plaintiff claims to have never admitted to having used marijuana within the two years prior to his application.  (See Pl. Aff. ¶ 1; Pl. Opp. Summ. J. Ex. 12 at 1.)   It is undisputed that the plaintiff admitted to last using marijuana in his sophomore year of college at Furman, which was Fall 2002 through Spring 2003.  (Pl. Dep. at 88.)  That time frame was more than two years prior to the plaintiff's application for employment in October-December, 2005.

In contrast, other than Loftis's own representation, the defendant has submitted no evidence that the plaintiff ever admitted to using within two years of his application and certainly has produced no evidence that use in that time period was the *sole* reason for rejection of the plaintiff's application.  In fact, even now the defendant admits, by virtue of the legal position taken in this case, that there were at least two reasons for the decision, in direct contradiction of Loftis's stated position.

As to the allegations of dishonesty in his application, the plaintiff has also submitted evidence of pretext creating issues of fact.  The defendant contends that in response to the Pre-Offer Questionnaire completed on or about October 5, 2005, the plaintiff denied that he had ever possessed illegal drugs in response to question 16, (Malone Dep. at 50, 65) but then admitted to having used marijuana in college.  The plaintiff responds that the defendant's position betrays the pretextual nature of its proffered reason insofar as the Pre-Offer Questionnaire asked about possessing and selling illegal drugs (Malone Dep. at 50, 65),  whereas the Post-Offer Questionnaire inquired only about usage (Pl. Opp. Summ. J. Ex. 12 at 2.).  The plaintiff contends that a reasonable jury could conclude that the two questions were distinct and, therefore, that the defendant is not being sincere by characterizing the answers as inconsistent.

If this was the only evidence of pretext as to the defendant's dishonesty rationale, the Court might be disinclined to find it sufficient to survive summary judgment.  The plaintiff's argument related to the colorable differences in the two questions does not really

18

go to whether the defendant was lying about its professed reason.  It may simply suggest that the defendant was mistaken in regards to the plaintiff's subjective understanding of the questions.  In other words, the plaintiff could have reasonably interpreted a difference in the questions, justifying different answers, while the defendant simultaneously and earnestly believed he was being dishonest, whether or not he actually was.  And, of course, it is not province of the Court to decide whether the reason for an employer's adverse employment action "was wise, fair, *or even correct*, ultimately, so long as it truly was the reason for the [adverse employment action]."  *See Dugan v. Albemarle County School Bd.*, 293 F.3d 716, 722 (4th Cir. 2002) (emphasis added).  Pretext analysis does not convert the ADA into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *See Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989) (Title VII).

But considering the difference in the pre- and post-offer questions in conjunction with Sheriff Loftis's testimony that inconsistent responses were unequivocally *never* a factor in his decision (Loftis Dep. at 22), could lead a jury to find that dishonesty, proffered as a legitimate, non-discriminatory reason, is in fact merely charade for an illegal rationale.

Lastly, the defendant has generally been inconsistent as to its reasons for rejecting the plaintiff's application.  There is evidence that the defendant, at various times, has changed its rationale for rejecting the plaintiff, sometimes citing bad credit (Def. Resp. Interrogs. 1-2), dishonesty, drug use, and/or an inability to be polygraphed (see Pl. Opp. Summ. J. Ex. 14).  At other times, the defendant has stated that it was drug use *alone.*  As the plaintiff argues, the very shifting quality of the defendant's position, itself, may be interpreted as evidence of pretext by the jury.  *See Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 646-47 (4th Cir. 2002).

Accordingly, the issues of fact exist as to the plaintiff's failure-to-hire claim.  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's

asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

## II.        Fair Credit Reporting Act

The plaintiff's final claim is one pursuant to 15 U.S.C. § 1681b of the Fair Credit Reporting Act ("FCRA"). The plaintiff contends that the defendant relied upon a consumer credit report regarding the plaintiff's credit history without providing the plaintiff with a copy of the report and a description of his rights, as required by the FCRA.

The relevant portion of the FCRA, upon which the plaintiff relies, provides:

[I]n using a consumer report for employment purposes, before taking any adverse action based in whole **or in part** on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates--

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(3)(A) (emphasis added). "Adverse action" is defined as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." *Id.* § 1681a(K)(1)(b)(ii). The FCA provides for civil liability for both negligent and willful violations. *See* 15 U.S.C. § 1681o & § 1681n(a).

The defendant does not argue that it complied with Section 1681b but instead contends that it was not required to do so. Specifically, the defendant argues that the plaintiff's credit report formed no basis of the decision not to hire him. This is a remarkable position for the defendant to take considering it served discovery answers on the plaintiff which stated that "the hiring decision relied on the weight of the background information obtained to that point ***including plaintiff's credit report***." (Def. Resp. Interrog. 1.) The plaintiff has corroborated the defendant's representation by testifying that he was, in fact, told that his credit affected the hiring decision. (Pl. Dep. at 104-05.) The other evidence cited by the defendant suggesting that the plaintiff's credit was, in fact, not considered (see

20

Taylor Dep. at 63-65; Williams Dep. at 22; Loftis Dep. at 17-22) simply reinforces the conclusion that a genuine issue of fact remains for trial.

While the defendant summarily argues that a cause of action only lies where the plaintiff has suffered actual damages, *see* 15 U.S.C. § 1681o(a)(1), issues of fact exist as to whether the plaintiff's credit would have supported rejection of his application, which would constitute an actual injury.

Accordingly, the claim should survive summary judgment because issues of fact persist.  For those same issues of fact, the plaintiff's motion cannot be granted.

## CONCLUSION

Wherefore, it is hereby recommended that the plaintiff's motion for summary judgment [Doc. 105] should be DENIED.  It is further recommended that the defendant's motion for summary judgment [Doc. 62] should also be DENIED.


                                                    s/Bruce H. Hendricks
                                                    United States Magistrate Judge


August 11, 2008
Greenville, South Carolina